# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Sylvia Thompson, on Behalf of Herself and All Others Similarly Situated,<br><br>    Plaintiffs,<br><br>        v.<br><br>The Sherwin-Williams Company and The Sherwin-Williams Manufacturing Company USA,<br><br>    Defendants. | Case No.<br><br><br><br>Plaintiff Demands Trial by Jury |

## CLASS ACTION COMPLAINT

Plaintiff, Sylvia Thompson, on behalf of herself and all others similarly situated, alleges as follows:

## NATURE OF CASE

1.      Throughout the Class Period, Defendants The Sherwin-Williams Company and The Sherwin-Williams Manufacturing Company USA, (hereinafter "SW") manufactured a number of paints and coatings, which include SW Duration, SW Deckscapes, and SW Wood Primers (hereinafter, "Products" or "Subject Products"). Each of the Defendants, as affiliates and joint venturers, falsely advertised them to Plaintiff and consumers as being suitable for certain uses and superior to other manufacturers' products.

2.      Defendants manufacture the Subject Products. Through its near 5,000 stores nationwide and on the internet, SW engaged in a pervasive scheme pursuant to which it falsely advertised the Subject Products directly to Plaintiff and class members as being

1

superior to other manufacturers' coating products, and thus deceptively induced Plaintiff and class members to purchase the Products.

3.      Plaintiff and class members have now discovered that SW's Subject Products do not live up to Defendant's express and affirmative representations regarding its Products. Rather than providing the promised "Unsurpassed Lifetime Durability" and years of protection, they actually peel, deteriorate, delaminate, and fail in short duration so as not to be suitable for use as represented. Furthermore, not only are its products deteriorating at a rapid pace, but soon consumers discover that, if not removed and replaced with non-defective products at an enormous expense to Plaintiff and class members, the Products fail to protect their homes, decks and other structures. As a result, after proper application in accordance with Sherwin Williams' instruction, damage results to class members' homes, decks, and other structures. Plaintiff and class members have, and will continue to, expend substantial costs to attempt to repair, replace and remediate the problems, but will likely also have to pay for a total replacement of the siding and deck substrates themselves. Throughout the Class Period, Defendants have also engaged in an illusory warranty program that is procedurally and substantively unconscionable. Despite demand, the Defendants have uniformly refused to pay the Plaintiff and class members for the damages sustained.

4.      Plaintiff brings this class action suit to require the Defendants to stop its unlawful conduct and to provide remuneration to Plaintiff and all of those affected as a result of the failure of the Subject Products. As alleged in detail, Defendant's conduct violates the Magnuson-Moss Warranty Act and state consumer protection and false advertising laws, breaches express and implied warranties, constitutes fraudulent concealment, and has unjustly enriched the Defendants. Given the lack of compensation to class members, and the

cost of litigation, this class action may be the only chance for the Plaintiff and class members to obtain justice and remedy the obvious wrongs of Sherwin Williams.

## JURISDICTION AND VENUE

5.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 (a) and (d)(2), because the amount in controversy exceeds $5,000,000.00 exclusive of interest and costs, and more than two-thirds of the members of the proposed class are citizens of states different from that of Defendants.

6.     This Court has jurisdiction under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq., because the amount in controversy exceeds $50,000.00 exclusive of interest and costs. Furthermore, the class consists of more than 100 affected consumers.

7.     This Court has personal jurisdiction because the Defendants have conducted substantial business in The Commonwealth of Massachusetts, operate 24 stores in the Commonwealth from which they sold their Products and intentionally and purposefully placed the Products into the stream of commerce within this District and throughout the United States.

8.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants' improper conduct alleged in this complaint occurred in and/or emanated from this judicial district. Defendants have advertised and received substantial revenue and profits from the sale of the Products in this District from the over 20 Sherwin Williams stores.

## PARTIES

9.     Plaintiff Sylvia Thompson is a resident and citizen of the State of Florida. She purchased Sherwin Williams products in Florida, Massachusetts, and Maine and has standing to pursue the claims of this class, as more fully defined below.

10.     Defendant The Sherwin-Williams Company is an Ohio corporation with its principal place of business in Cleveland. The Sherwin-Williams Company is a multinational company with subsidiaries that manufacture and market purportedly high-performance coatings, sealants, and specialty chemicals, primarily for maintenance, repair, and improvement applications, including Duration and Deckscapes. The Sherwin-Williams Company oversees the work of Defendant The Sherwin-Williams Manufacturing Company, USA, including designing, manufacturing, and purposefully causing the Products to be placed into the stream of commerce within this District and throughout the United States. At all times relevant here, The Sherwin-Williams Company was, and is, the parent company of The Sherwin-Williams Manufacturing Company, USA.

11.     Defendant The Sherwin-Williams Manufacturing Company is a subsidiary of Defendant The Sherwin-Williams Company and manufactures protective paints and coatings for home and industry use. The Sherwin-Williams Manufacturing Company is a corporation organized and existing under the laws of Ohio with its principal place of business in Cleveland, Ohio. The decisions, acts and omissions alleged here were conceived by, implemented, and at all times carried out by Defendant The Sherwin-Williams Manufacturing Company, directly or in concert with Defendant The Sherwin-Williams Company.

## COMMON FACTUAL ALLEGATIONS

12.    Millions of Americans have cedar or wooden siding and decking and similar structures and substrates outside their homes. The surfaces of these structures are prone to wear and deterioration without the application of quality coatings.

13.    The Defendants have engaged in a systematic, pervasive marketing scheme pursuant to which they falsely advertised and sold their defective Products in Massachusetts and nationwide. Defendants set up a network of nearly 5,000 stores nationwide to sell the Subject Products directly to Plaintiff and class members. Defendants fully recognized that Plaintiff and consumers purchasing cedar or wood coating products for their homes' protection need and want premium quality products that are suitable to protect their homes and structures from the environment.

14.    As part of their overall marketing scheme, the Defendants, while knowing that their Subject Products were defective, compared them directly to their competitors utilizing false information in order to unfairly gain a competitive advantage and maximize sales. By doing so, Defendants marketed, sold, and continue to sell the Subject Products to millions of unsuspecting consumers nationwide.

**SHERWIN WILLIAMS DURATION PRODUCT**

15.    Throughout the Class Period, Defendants falsely represented, emphasized and touted its exterior "Duration" product's "lifetime durability" by representing directly on its Duration product:

**DURATION**

**UNSURPASSED LIFETIME DURABILITY**

**LIFETIME WARRANTY**



16.    Contrary to SW's representations, its Duration product:

a.    Is not durable;

b.    Does not have Unsurpassed Lifetime Durability;

c.    Peels off in the ordinary course from siding, especially cedar siding, and peels off in sheets;

d.    Is not suitable for use on cedar siding;

    e.   It is not suitable for use on prior painted surfaces;

    f.   Lacks suitable elasticity and is not flexible;

    g.   Cracks, delaminates and degrades;

    h.   Does not penetrate, delaminates, and loses adhesion between the Duration and the substrate to which it is applied in a short duration;

    i.   Deteriorates requiring Plaintiff and class member homeowners to strip and remove all of the Duration, remediate the cedar or wood substrate in cases where it is possible to do so, and re-prime and paint all of the new substrate with a non-Sherwin Williams product that is not defective.

17.    Sherwin-Williams has now belatedly and partially admitted the truth that its Duration product does not have "Unsurpassed Lifetime Durability." SW has recently removed the representation from its product that Duration possesses "**Unsurpassed Lifetime Durability**," but refuses to accept financial responsibility for the systemic failure of its Duration product, especially on cedar siding and prior painted surfaces.

18.    Sherwin-Williams also expressly represents and emphasizes on its Duration product that it is guaranteed as having a "Lifetime Warranty."

19.    The representation that Sherwin-Williams has a "Lifetime Warranty" is false, misleading and illusory, and SW fails to honor its unconscionable warranty and breached it obligations to the Plaintiff and class members.

20.    Sherwin Williams also marketed its Duration product to Plaintiff and class members as:

    a.   Having long-lasting performance;

    b.   Possessing a thick, flexible layer which provides resistance to peeling;

    c.  Being self-priming;

    d.  Having a mildew-resistant coating;

    e.  Being backed by a lifetime warranty for as long as you own your home.

21. At all times material hereto, throughout the class period, when SW marketed and sold Duration and issued its lifetime warranty, SW knew:

    a.  Its Duration product was defective;

    b.  Its Duration product was not suitable for application on cedar siding substrates;

    c.  Its Duration product suffered from the deficiencies set forth in paragraph 16;

    d.  Its Duration product was not suitable for application on prior painted wood or cedar substrates;

    e.  The use of its Duration product on cedar siding or prepainted substrates results in the damages set forth in paragraph 22.

22. The use and application of SW's Duration results in the following damages:

    a.  Labor and materials to prepare home, siding, and/or other structures for remediation;

    b.  Labor and materials to remove the defective and/or non-conforming SW Duration;

    c.  Labor and materials to clean and restore the quality of the underlying substrate, where it is possible to do so. In many cases the substrate has become so damaged from Duration that the substrate must be replaced.

    d.  Labor and materials to prime the new substrate with non-SW primer; and

    e.  Labor and materials to replace and apply a new, non-defective coating.

23. At all times material and relevant hereto, when SW issued its warranty and throughout the class period, Sherwin Williams knew that its Duration product was defective and that class members, including the Plaintiff, who used Duration would have to incur and pay for the damages set forth in paragraph 22 above.

24. At all times material and relevant hereto, when it issued its warranty and throughout the class period, Sherwin Williams:

    a.  Knew that the cost of labor related to remediating the defective Duration product, as set forth in paragraph 22 above, would be at least fifteen times the cost of its Duration product;

    b.  Knew that its approximate cost of $73 per gallon and possible refund of the material purchase price would be de minimis when compared to the cost of labor necessary to remediate the defective Duration Product;

    c.  Knew that the cost of labor related to remediating the defective Duration Product would be so substantial as to render its express warranty substantively and procedurally unconscionable;

    d.  Knew that excluding the necessary cost of labor related to the damages, set forth in paragraph 22 above, would render its "cost of product" warranty grossly unconscionable in relation to the total cost to be incurred by the Plaintiff and class members to remedy the damage from the use of its Duration product; and

    e.  Knew that excluding the necessary cost of labor related to the damages from their SW warranty would leave Plaintiff and class members with an enormous cost to actually repair the damage, as set forth in paragraph 22.

**DURATION CONSUMER COMPLAINTS**

25.     Plaintiff and consumers have been strenuously complaining to Sherwin-Williams about its Duration product, but SW has ignored the complaints and breached its obligations to the Plaintiff and class members.

26.     Sherwin-Williams is and has been well aware that its claim that Duration has "Unsurpassed Lifetime Durability" was false, misleading and illusory. Sherwin Williams has received numerous complaints regarding its Duration product, including, but not limited to the following:

**Billybob         Apr 05, 2012**

What exactly is the paint warrantied to withstand for a lifetime?

**Rmb            Apr 05, 2012**

Sorry, Should of warned you years ago when Duration first came out. The life time paint that needs no primer is a one coat paint and yes can be used down to 35 degrees.

All the pre-work in the world didn't matter. Some places it stuck and others could be peeled off in 3 to 4 inch wide strips 5 to 6 ft long. This was over the old SW paint that had been prepped properly.

**Anonymous   Sep 29, 2015**

ABSOLUTE SCUMBAGS! I had the same experience. They mislead customers into buying this product with their "Lifetime Warranty" which isn't worth anything.

Sherwin Williams = Duration Paint life time warranty

**Lowell, Indiana         May 31, 2010**

There is no warranty! The paint began to peel. I contacted Sherman Williams. They have every excuse in the book and will not stand behind their paint.

Don't lie to us and advertise a warranty that you won't stand behind.

I will buy a different brand from now on.

Sherwin-Williams product [Duration] does not live up to its warranty and representatives are no help.

I didn't like "durability of product."

My professional painter painted my entire house with Sherwin Williams Duration Paint and it has totally ruined my house!!! It is peeling and chipping all over the house. SW paint experts came out to see it, interviewed my painter and it is a paint problem and has nothing to do with the preparation. Buyer beware!!! Do not buy this paint!! My painter has worked with a lot of paints and has never seen anything like this… Further to that, it has been 3 weeks since this happened and I have yet to be offered a solution (which touts a 100% guarantee to stand behind their product…) I have renamed the SW Duration paint product SHORT Duration paint.

**SHERWIN WILLIAMS DECKSCAPES PRODUCT**



27. Throughout the class period, Sherwin Williams manufactured and falsely advertised its Deckscapes product. Notwithstanding SW's knowing that its Deckscapes product was defective, Defendants marketed and sold Deckscapes to millions of unsuspecting consumers including the Plaintiff and class members.

28. Throughout the class period, SW claimed and represented that its Deckscapes Deck Finishing System was perfect for all deck substrates and provided long-lasting results, durability and adhesion.

29. SW represented that its Deckscapes Deck Finishing System:

    a.  Was the most complete line of deck finishing products available and superior to its competitors;

    b.  Was faster to apply than other products;

    c.  Was easier to use than other products;

d.  Penetrates deeply to enhance the look of the wood grain;

e.  Provides superior UV and weathering protection;

f.  Has unique technology that binds loose fibers to improve topcoat adhesion;

g.  Enhances the look of the wood grain;

h.  Protects against UV and water damage;

i.  Delivers great penetration and temperature tolerance;

j.  Was ideal for seriously weathered wood, cedar, redwood, or new construction.

30. Consistent with its prior unfair competition practices, SW claimed its Deckscapes product was far superior to any other manufacturer.

31. Sherwin Williams, in a uniform and standardized marketing brochure, states as follows:

**COMPETITIVE ANALYSIS**

After being exposed to exterior weathering, Deckscapes held its finish longer over twenty

leading competitors.

***

**OUR PRODUCT INNOVATION RAISES THE BAR**

Thanks to Sherwin-Williams's superior technology, Deckscapes ensures results that no

competitor can match.

32. SW fully touted its Deckscapes Deck Finishing System by stating:

Quality, quickly

That's the Deckscapes Advantage

33. Despite its knowledge that its Deckscapes products were inherently defective and did not provide the benefits advertised, and in fact damaged underlying wood substrates of all

13

kinds, SW continued to sell its Deckscapes products to millions of unsuspecting consumers.

34. Contrary to Sherwin Williams' representations, Deckscapes:

    a.  Creates a film on top of the wood after drying;

    b.  Has a poor appearance when finished;

    c.  Does not apply well;

    d.  Dries unevenly even though Deckscapes is applied properly;

    e.  Loses a substantial portion of its original color in short order;

    f.  Deteriorates and degrades in short order, fades and peels;

    g.  Is difficult to apply; and

    h.  Does not have the coverage rates represented by Sherwin Williams.

35. At all times material hereto, throughout the class period, when SW marketed and sold Deckscapes, SW knew:

    a.  Its Deckscapes product was defective;

    b.  Its Deckscapes product was not suitable for application on cedar or wood substrates;

    c.  Its Deckscapes product suffered from the deficiencies set forth in paragraph 34;

    d.  Its Deckscapes product was not suitable for application on prior painted substrates.

36. Sherwin Williams knew that its Deckscapes product was defective by design, failed to perform as a suitable product, and was falsely advertised and marketed.

37. Sherwin Williams Deckscapes product did not absorb, block, or stabilize wood fibers or enhance the natural wood grain and prevent mold and mildew.

38. Deckscapes, contrary to Sherwin Williams' representations:

    a.  Peels off at the lowest level;

    b.  Shears off and deteriorates quickly;

    c.  Allows water penetration causing loss of adhesion;

    d.  Is not suitable for use as a coating for wood decking.

39. Sherwin Williams admits its product is defective and has discontinued and no longer sells Deckscapes and does not stand behind any of its Deckscapes Exterior Products

40. However, for the Plaintiff and class of homeowners who purchased, applied and now must remove and replace all of the defective Deckscapes products, this is a major financial problem.

## DECKSCAPES CONSUMER COMPLAINTS

41. Throughout the class period, Sherwin-Williams is and has been well aware that its Deckscapes product was prone to peeling, shearing, accelerated deterioration, and is and was further aware that its Deckscapes stain allows for water penetration, and is not suitable for use on a wood deck substrate. Sherwin Williams has received thousands of complaints regarding its Deckscapes product, including, but not limited to the following:

**Larry**

Pealed after 1 year of application had to use almost twice as much to cover my deck, and this is not a stain, It's a deck paint……Now I am stuck with a painted deck, don't waste your money.

**Stu**

Dont go near this stuff. Scuffing and peeling off after 6 months. I did everything as instructed, including deck wash before staining. Does not penetrate the wood at all.

**MCS**

I have a large deck (approx 1,000 square feet) that has been stained with multiple coats of Sherwin Williams Deckscapes solid waterborne stain. The horizontal surfaces are bubbling and peeling. Sherwin Williams has discontinued their Deckscapes.

**Deck Stain Help**

The only way to remove multiple layers of a solid [Deckscapes] stain is to sand it all off.

**TJS**

We used this product on a new deck that we let weather for one year. One year after applying the stain, the full floor had 10% peeling. Now after 2 years almost 50% peeled.

**Rose**

HELP !!!! The Sherwin Williams Deckscapes treated deck began to peel almost immediately. I reported this to them and their manager Sara Williams came and saw all the peeling. I have asked repeatedly for this to be fixed. All my friends and neighbors are shocked at how bad the deck looks. The deck looked way better BEFORE your product was applied. How can my deck be restored to its former beautiful self? Thanks.

**Donna Burns**

Buyer beware!!! After a few years our deck is peeling!! Not supposed to peel. It is now required to be stripped and will require a great amount of time and hard work.

**Carla**

Terrible stain, peels, cracks. I now will have to have deck professionally sanded and start over. Of course with a different product. No more Sherwin Williams!!!

**Jay Watson**

Will never use again does not hold up 60% of deck peeling after 6 months.

**Cynthia Cornwell**

After less than 1 year entire deck was peeling! Stain was applied by a professional. Hoping that there is some sort of refund on this product…

**JO DAUGHERTY**

Stain is peeling down to the bare wood even in low traffic areas. I too thought I could rely on a Sherwin Williams product. Not so.

**Chris**

Terrible product. Does not last. Only one year old and needs to be redone. Do not use this product. What a waste of time and money.

**Laima**

The stain started peeling before it was even 1 year old. The painters had to restain it with a different product.

Horrible product. We will never use this company's paint or stain again.

What a mistake and waste of a lot of money.

**Owen Morgan**

I stained my house using this stain and in two years it was covered with mold. Prior to that I had Olympic stain for over twenty years with no mold.

**Ken**

This by far is the worst deck stain I have ever used. If you are looking at this product put it down and run from it as fast as you can.

**Carol**

I have put it on twice in one year and looks horrible after a few months. Going to try something else, for sure!!

**Deck Stain Help**

I do not think you can fix this. Most likely you will need to remove it all and start over. Probably will need to sand it off as a stripper will not work.

**Carole E**

Applied at the start of summer and paint/stain started bubbling up. By August, the issue was so widespread and noticeable. So VERY disappointed in the wearability, durability, and cost of this product.

**Doug**

This stuff wasn't cheap cost wise but it ruined our deck after a year peeling. Can't clean it to reapply. Garbage. Sherwin Williams should make this right somehow!

**Deborah Mac**

We put this on our pool deck and stairs and shed platform last year. We used Hawthorne Semi-Solid. With the cost and following ALL prep instructions and application

instructions, I am so very disappointed. The deck is spotted and already chipping and peeling. It also has a white haze on all surfaces painted. I would never recommend this product to anyone to use. I read reviews and asked questions before choosing it…today I realize I made a huge expensive mistake. I questioned the need to seal it after application and was told I didn't need to. Something sure went wrong.

**Jean**

This stain did not even last to the next year, I had to wait due to expense until two years. Had to have someone out again to prepare wood for stain but due to cost stained it myself. Would not recommend this product.

**K. Mager**

I painted 2 coats originally over older stain on deck approximately 10 years old in 2011 exactly as required. First year paint was bubbling up in spots. Scraped the bubbles and went right down to bare wood. Each year keep scraping bubbles and paint just peels off it appears to be wet underneath. Shoveled the snow off in winter with plastic shovel thought this could help. Now there are spots that are starting to rot the wood where chairs are attached to deck. Will have to replace the deck as it is peeling worse as time goes on. I have sanded the areas and painted each year. Pressure washing is a night mare as lifts up some but not all. Not a good product. Sorry I ever used it thought I could get the very best product at Sherwin Williams but not so.

**Darren**

I literally just finished my deck with Sherwin Williams stain and ran into all the same issues. Had a nice wood deck and now I have a brown painted deck. Very unhappy with the product, wish I had found this review prior to using it. It looked horrible after one

coat and had to use two on everything I did! Waste of money, time and effort. Cannot

wait until it starts peeling in 1 year!

**SHERWIN WILLIAMS EXTERIOR OIL-BASED WOOD PRIMER**



42. Sherwin Williams manufactures and sells exterior oil-based wood primer.

43. Sherwin Williams emphasizes and represents that its wood primer:

    a.  **Penetrates seals and blocks stains;**

    b.  Is specifically suitable for use on cedar siding or cedar substrates; and

    c.  Is specifically suitable for use on previously painted surfaces.

44. Sherwin Williams represented that its Duration was self-priming. SW has now issued an

alert indicating that Sherwin Williams' primer is necessary to provide adequate adhesion

and sealing qualities, and, especially with respect to cedar siding substrates, must be

formulated to be compatible with the cedar siding.

45. Notwithstanding Plaintiff's use of Sherwin Williams' exterior oil-based wood primer, the Duration paint delaminated, failed to provide adequate adhesion and sealing qualities as represented, and failed.

46. Sherwin Williams exterior oil-based wood primer is defective and:

    a.  Does not penetrate wood effectively;

    b.  Does not seal wood;

    c.  Does not block stains;

    d.  Is not suitable for use on cedar; and

    e.  Is not suitable for use on previously painted surfaces.

47. Plaintiff purchased the Defendants Duration, Oil-Based Wood Primer, and Deckscapes products directly from Sherwin Williams. Before making her purchases, she viewed and reasonably relied upon the advertising claims made by SW concerning the high quality and long-lasting protection of its products. The products were applied to her house and deck in full compliance with SW's application instructions. Within a short time, the Duration Product began to peel off from the cedar siding and delaminated all over the home, causing extensive damage to the cedar substrate below and is so extensive as to now require full replacement of the cedar siding substrate.

48. The SW Deckscapes Product peeled, deteriorated, faded, failed, and destroyed the pressure-treated wood deck.

49. After noticing the major problems, she contacted SW to complain and ask for assistance on multiple occasions. They finally sent a representative out to inspect her house and deck.

50. The representative acknowledged problems and promised to report back but never did. The Plaintiff contacted SW again and she was told again they would respond but never did.

51. The Plaintiff's home remains in terrible condition as a result of the Defendant's defective Products and the Plaintiff has been unable to sell her home.

52. As a direct and proximate result of Defendant's deceptive practices, including the fact that the Defendants' Products are defective, prematurely failed and have deteriorated, Plaintiff now requires complete labor and materials to remediate and replace the siding and deck substrate. Plaintiff's home has suffered extensive diminution in value and the Defendants have refused to reimburse her for the costs associated with the necessary remediation.

## CLASS ACTION ALLEGATIONS

53. Plaintiff brings this action against Defendant pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and 23(b)(3) on behalf of herself and all other persons similarly situated. As such, Plaintiffs seek to represent the following classes:

Duration Nationwide Class: All persons, entities or organizations who purchased the Sherwin Williams Duration product in any of the fifty States, the District of Columbia, Puerto Rico and all other United States territories and possessions.


Deckscapes Nationwide Class: All persons, entities or organizations who purchased, or used the Sherwin Williams Deckscapes product, in any of the fifty States, the District of Columbia, Puerto Rico and all other United States territories and possessions.

Primers Nationwide Class: All persons, entities or organizations who purchased, or used any of the Sherwin Williams Primers, in any of the fifty States, the District of Columbia, Puerto Rico and all other United States territories and possessions.

Massachusetts Duration Class:  All persons in the Nationwide Class who purchased or used the Sherwin Williams Duration product in the Commonwealth of Massachusetts.

Massachusetts Deckscapes Class:  All persons in the Nationwide Class who purchased or used the Sherwin Williams Deckscapes product in the Commonwealth of Massachusetts..

Massachusetts Primer Class:  All persons in the Nationwide Class who purchased or used any Sherwin Williams primer product in the Commonwealth of Massachusetts.

Excluded from the Classes are: (a) Sherwin Williams, its officers, directors and employees; its affiliates and affiliates' officers, directors and employees; its distributors and distributors' officers, directors and employees; and Sherwin Williams distributors' officers and directors; (b) Plaintiffs' Counsel; (c) judicial officers and their immediate family members and associated court staff assigned to this case; and (d) persons or entities who or which timely and properly excluded themselves from the Class.

54. Certification of Plaintiff's claims for class-wide treatment is appropriate because, Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

**Numerosity – Federal Rule of Civil Procedure 23(a)(1)**

55. The Classes and subclasses consist of hundreds of thousands of people. Therefore, the Class is so numerous that joinder of all members would be impracticable. The sheer number of Class members makes joinder of all members impracticable.

56. The individual Class Members are so numerous that joinder of all members is impracticable. Defendant sold tens of thousands of its Duration, Deckscapes and Wood-Primer Products with inherent defects in the Commonwealth of Massachusetts and nationwide. The individual Class Members are ascertainable as the names and addresses of all Class Members can be identified in the business records maintained by the Defendant. The precise number of Class Members is in the thousands and can only be obtained through discovery, but the numbers are clearly more than can be consolidated in one complaint making it impractical for each Class Member to bring suit individually. Plaintiffs do not anticipate any difficulties in the management of the action as a class action.

**Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2), 23(b)(2) and 23(b)(3)**

57. This action involves common questions of law and fact that predominate over any questions affecting individual Class Members, including, but not limited to:

    a. Whether Sherwin Williams misrepresented its Duration "lifetime durability" as "unsurpassed";

    b. Whether Sherwin Williams has misrepresented, concealed, and engaged in acts and omissions concerning the standard, quality, and safety

characteristics of its Duration paint and concealed the complaints concerning the Product;

c.  Whether Sherwin Williams has misrepresented, concealed, and engaged in acts and omissions concerning the standard, quality, and safety characteristics of its Deckscapes product and concealed complaints concerning the Product;

d.  Whether Sherwin Williams has misrepresented, concealed, and engaged in acts and omissions concerning the standard, quality, and safety characteristics of its Primer Products;

e.  Whether Sherwin Williams' acts and omissions regarding the "unsurpassed lifetime durability" of its Duration product were likely to mislead a reasonable consumer;

f.  Whether Sherwin Williams' acts, omissions, and concealment of consumer complaints regarding the quality and appropriate use of its Deckscapes product were likely to mislead a reasonable consumer;

g.  Whether Sherwin Williams' acts and omissions regarding the quality of its paint primer Product were likely to mislead a reasonable consumer;

h.  Whether Sherwin Williams' continuing omission that its Deckscapes product was not of good quality, and was not appropriate for use on cedar or wooden decks, was a material fact that a reasonable consumer would be expected to rely on when deciding whether to purchase Deckscapes;

i.  Whether Plaintiffs and the other Class Members have been damaged and, if so, the extent of such damages;

j.  Whether based upon Sherwin Williams' acts and omissions, which have continued through the present date, Plaintiffs and the other Class Members are entitled to equitable relief, including but not limited to, restitution and injunctive relief;

k.  Whether Sherwin Williams breached its express warranties; and

l.  Whether Sherwin Williams' warranty for its Duration product, Deckscapes product, and paint primer products was unconscionable and contained an unconscionable limitation of remedies.

58.  Except as otherwise provided herein, the term "Class Members" shall collectively refer to the Nationwide Classes and subclasses as defined above. Plaintiff reserves the right to modify or amend the definitions of the proposed classes before the Court determines whether certification is appropriate. The Class Period begins January 1, 2005 and continues through the present date.

59.  Defendant subjected Plaintiff and the respective Class Members to the same unfair, unconscionable, and deceptive practices and harmed them in the same manner. The conduct described herein is part of the Defendant's standard and undisputed business practices.

**Typicality - Federal Rule of Civil Procedure 23(a)(3)**

60.  Plaintiff is a member of the classes and Plaintiff's claims are typical of the claims of the Class Members because of the similarity, uniformity, and common purpose of the unlawful conduct of the Defendants.  Each Class Member has sustained, and will continue to sustain, damages in the same manner as Plaintiff as a result of Defendants' continuous unconscionable and wrongful acts.

**Adequacy of Representation - Federal Rule of Civil Procedure 23(a)(4)**

61. Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class. Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel, experienced in litigation of this nature, to represent her. There is no hostility between Plaintiff and the unnamed Class members. Plaintiff anticipates no difficulty in the management of this litigation as a class action.

62. To prosecute this case, Plaintiff has chosen counsel that is very experienced in class action litigation and have the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

**Requirements of FED. R. CIV. P. 23(b)(1) & (2)**

63. Prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party opposing the Class.

**Superiority**

64. A class action is superior to individual actions in part because of the non-exhaustive factors listed below:

   a. Joinder of all Class Members would create extreme hardship and inconvenience for the affected customers as they reside in different parts of the United States;

   b. Individual claims by Class Members are impractical, because the costs to pursue individual claims would involve very substantial economic resources and it would be unreasonable to require individuals to bear that expense, given the Defendants' culpable acts and omissions. Thus, individual Class Members have no economically feasible way of prosecuting and controlling separate actions;

c.  There are no known individual Class Members who are interested in individually controlling the prosecution of separate actions;

d.  The interests of justice will be well-served by resolving the common disputes of potential Class Members in one forum;

e.  Individual suits would not be cost effective or economically feasible as individual actions; and

f.  The action is manageable as a class action.

## COUNT I

## BREACH OF EXPRESS WARRANTY

## VIOLATION OF UCC 2-302

### *On Behalf of All Classes and Subclasses*

65. Plaintiff realleges and incorporates by reference Paragraphs 1 through 52 as though fully set forth herein.

66. Massachusetts as well as the 49 states listed below, the District of Columbia, and Virgin Islands have codified and adopted the provisions of the Uniform Commercial Code governing the striking of unconscionable contract provisions: Ala.Code 1975, §§ 7-2-302, AS § 45.02.302, A.R.S. § 47-2302, A.C.A. § 4-2-302, Cal. Civ. Code § 1670.5 (West), C.R.S.A. § 4-2-302, C.G.S.A. § 42a-2-302, 6 Del.C. § 2-302, DC ST § 28:2-302, F.S.A. § 672.302 (West), Ga. Code Ann., § 11-2-302, HRS § 490:2-302, I.C. § 28-2-302, 810 Ill. Comp. Stat. Ann. 5/2-302, Ind. Code Ann. § 26-1-2-302 (West), I.C.A. § 554.2302, K.S.A. 84-2-302, KRS § 355.2-302, 11 M.R.S.A. § 2-302, MD Code, Commercial Law, § 2-302, M.G.L.A. 106 § 2-302, M.C.L.A. 440.2302, M.S.A. § 336.2-

302, Miss. Code Ann. § 75-2-302, V.A.M.S. 400.2-302, MCA 30-2-302, Neb.Rev.St. U.C.C. § 2-302, N.R.S. 104.2302, N.H. Rev. Stat. Ann. § 382-A:2-302, N.J.S.A. 12A:2-302, N. M. S. A. 1978, § 55-2-302, N.Y. U.C.C. Law § 2-302 (McKinney), N.C.G.S.A. § 25-2-302, N.D. Cent. Code Ann. § 41-02-19 (West), Ohio Rev. Code Ann. § 1302.15 (West), 12A Okl.St.Ann. § 2-302, Or. Rev. Stat. Ann. § 72.3020 (West), 13 Pa.C.S.A. § 2302, 6A R.I. Gen. Laws Ann. § 6A-2-302 (West), Code 1976 § 36-2-302, SDCL § 57A-2-302, T. C. A. § 47-2-302, V.T.C.A., Bus. & C. § 2.302, U.C.A. 1953 § 70A-2-302, 9A V.S.A. § 2-302, 11A V.I.C. Art 2 § 2-302, VA Code Ann. § 8.2-302, Wash. Rev. Code Ann. § 62A.2-302 (West), W. Va. Code, § 46-2-302, W.S.A. 402.302, and W.S.1977 § 34.1-2-302.

67. At all times material and relevant hereto, Sherwin Williams had direct knowledge of the defects contained in the class Products.

68. The purported limitation of remedies on the class Products, which excludes labor and remediation costs, fails of its essential purpose and is unconscionable, based upon all of the facts and circumstances set forth in this Complaint, and is unenforceable.

69. Throughout the Class Period, Sherwin Williams knew that the class Products limitation of its warranty to the refund of the product purchase price was unconscionable.

70. Since Sherwin Williams knowingly omitted material information regarding the defects in the class Products when it issued and implemented the express warranty and sale contracts with limitation of remedies for Plaintiff and Class Members, the warranty provisions limiting the remedies is unconscionable.

71. The Defendants have also fraudulently concealed the existence of major performance problems with its Products and the receipt and denial of warranty claims so as to be equitably estopped from relying on any statute of limitations defense.

72. Under UCC 2-302, a Court may strike or limit the application of any unconscionable clause in a contract or warranty to avoid any unconscionable result and Plaintiffs request that this Honorable Court strike the limitation of remedies of labor coverage as unconscionable, and enforce the remainder of the warranty.

## COUNT II

## DECLARATORY RELIEF

### *Claim Brought on Behalf of the Declaratory Relief Class*

73. Plaintiff realleges and incorporates by reference Paragraphs 1 through 52 and 71 as though fully set forth herein.

74. Pursuant to 28 U.S.C. §2201, the Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

75. Defendants marketed, distributed, and sold the its class Products with latent defects. Defendants failed and continue to fail to reimburse class members for the damages caused by the use of the class Products and then engaged in a pervasive scheme to conceal the latent defect.

76. Accordingly, Plaintiff seeks the entry of the following declarations:

   a. Defendants' "warranty" remedy limited to a "refund of the original purchase price" or "replacement with a product of equal value" as to its Duration product is declared unconscionable;

30

b.  The class Products have a propensity to prematurely fail, which cause consumers to suffer substantial damages, including the cost set forth in paragraph 22;

c.  Defendants knew and/or should have known its class Products had a propensity to prematurely fail, which would cause consumers to suffer damages;

d.  Defendants are required to disclose to consumers, at its own cost, that its Class Products have a propensity to prematurely fail that causes damages, including to other property;

e.  Defendants' express warranty fails of its essential purpose and Defendants' purported warranty limitations are void and unconscionable as a matter of law;

f.  Defendants are required to review and re-audit all prior warranty claims, including claims previously denied in whole or in part.

## COUNT III

## VIOLATION OF NATIONWIDE MAGNUSON-MOSS WARRANTY ACT

77. Plaintiff realleges and incorporates by reference Paragraphs 1 through 52 and 71 as though fully set forth herein.

78. Congress enacted the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* (the "Magnuson-Moss Act") in response to widespread consumer complaints regarding misleading and deceptive warranties. The Magnuson-Moss Act imposes civil liability on any "warrantor" for, *inter alia*, failing to comply with any obligation under written and implied warranties. 15 U.S.C. § 2310(d)(1).

79. The Products individually constitute a "consumer product" as defined by § 2301(1).

80. Plaintiffs and class members are "consumers" as defined by § 2301(3).

81. Defendant is a "warrantor" and "supplier" as defined by §§ 2301(4) and (5).

82. As described in detail in this Complaint,  Defendant has failed to remedy its Products' propensity to prematurely fail, despite its knowledge and notice of Products' propensity to prematurely crack, peel, flake, chip, bubble, separate, delaminate, discolor, and generally degrade after application, and its propensity to cause damage to cedar siding and wood deck substrates and other property.

83. Defendant places a written "limited lifetime warranty" on the Duration product, stating that Defendant "guarantees product performance." However, warranty terms purportedly limit liability to a refund or replacement of the product and limit consequential and incidental damages. In certain versions of the warranty, the limitations are not sufficiently set apart by underlining or highlighting. The warranty limitations are also unconscionable as a matter of law under UCC § 2-302, as adopted by the states.

84. At the time Defendant issued the written warranty for its Products, Defendant knew and had notice that its Products' had the propensity to prematurely fail. Defendant's continued misrepresentations and omissions concerning its Products, as well as Defendant's failure to abide by its written and implied warranties, are "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce," and, accordingly, are unlawful under 15 U.S.C. §§ 2310(b), 45(a)(1).

85. Plaintiff seeks to recover damages caused as a direct result of Defendants' breach of its written and implied warranties and its deceitful and unlawful conduct. Damages include, *inter alia*, labor and other costs associated with removing its Products and replacing siding and decking substrates and similar structures.

86. The Magnuson-Moss Act also provides for "other legal and equitable" relief. 15 U.S.C. § 2310(d)(1). As such, Plaintiff seeks reformation of Defendant's written warranty to comport with Defendant's obligations under the Act and consumers' reasonable expectations. Additionally, Plaintiffs seek to enjoin Defendant from acting unlawfully as further alleged herein, including discouraging Plaintiffs to seek all available remedies.

87. The Magnuson-Moss Act also provides for an award of costs and expenses, including attorneys' fees, to prevailing consumers in the Court's discretion. 15 U.S.C. §2310(d)(2). Plaintiff intends to seek such an award as prevailing consumers at the conclusion of this case.

## COUNT IV

## BREACH OF EXPRESS WARRANTY

88. Plaintiff realleges and incorporates by reference Paragraphs 1 through 52 and 71 as though fully set forth herein.

89. Defendants' Products labels promise and expressly warrant that they, inter alia, have "Unsurpassed Lifetime Durability", as in the case of Duration.

90. Defendants' Products also promise and expressly warrant certain performance characteristics as set forth above.

91. These promises become part of the basis of the bargain between the parties and created express warranties that the Products would conform to Defendants' affirmations and promises. Under the terms of these express warranties, Defendants are obligated to replace the Products sold to Plaintiff and the classes, as well as to repair any structural damages the Products caused.

92. Defendants' purported limitations in the warranty, including for the "exclusive remedy" of a refund or replacement, fail of their essential purpose and are procedurally and substantively unconscionable and thus fail under U.C.C. § 2-302, as adopted by the class jurisdictions. Defendants knew or should have known that the Products were susceptible to premature failure, Defendants had unequal bargaining power and misrepresented the Products' reliability, and the limited remedies unreasonably favor Defendants and fail Plaintiff's and the Classes' reasonable expectations for guaranteed satisfaction concerning product performance.

93. Defendants breached their express warranties by supplying the Products in a condition that does not satisfy warranty obligations and by failing to compensate Plaintiff and the Classes for damages caused by the Products.

94. Plaintiff has complied with the warranty terms, including applying the Product in accordance with Defendants' instructions and maintaining residence in their homes. Plaintiff has made a demand upon Defendants to perform under the warranty terms, but Defendants have failed to comply with those terms.

95. As a direct and proximate result of the breach of express warranties, Plaintiff has suffered damages, injury in fact, and ascertainable loss in an amount to be determined at trial, including repair and replacement costs and damages to other property.

<u>COUNT V</u>

<u>BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY</u>

96. Plaintiff realleges and incorporates by reference Paragraphs 1 through 52 and 71 as though fully set forth herein.

97. Defendants are in the business of manufacturing, designing, supplying, marketing, advertising, warranting, and selling the Products, which have been applied to Plaintiff's home, siding, deck and other similar structures, as well as the homes and decks of the Classes. Defendants impliedly warranted to Plaintiff, to Plaintiff's agents, and to the Classes, that the Products were of a certain quality, free from defects, fit for the ordinary purpose of resurfacing decks and similar structures, and suitable for providing protection to deck structures form harsh weather conditions and lasting longer than ordinary deck paints or stains.

98. But the Products were unfit for ordinary use and were not of merchantable quality as warranted by Defendants because the Products are defective and have the propensity to crack, peel, flake, chip, bubble, separate, and generally degrade. Before purchase, Plaintiff and the classes could not have readily discovered that the Products were not merchantable to paint cedar siding, coat wood decks and other structures, were not of the same quality as those generally acceptable in the trade, and did not conform to the quality previously represented.

99. Defendants have failed to provide adequate remedies under their limited warranties, which have caused those warranties to fail of their essential purpose, thereby permitting remedies under these implied warranties.

100.    Defendants have not sufficiently disclaimed the implied warranty of merchantability.

101.    The purported limitations in Defendants' warranties, including limiting the exclusive remedy to a refund or replacement, are procedurally and substantively unconscionable and thus fail under U.C.C. § 2-302, as adopted by the states listed in this

Count. Defendants knew or should have known that the Products are susceptible to premature failure, Defendants had unequal bargaining power and misrepresented the Products' reliability, and the limited remedies unreasonably favor Defendants and fail Plaintiff's and the classes' reasonable expectations for product performance.

102.    Plaintiff gave Defendants actual or constructive notice of the breaches of these warranties, and Defendants have failed to cure these breaches.

103.    As a direct and proximate result of the breaches of these implied warranties, Plaintiff and the classes have suffered damages, injury in fact and ascertainable loss in an amount to be determined at trial, including repair and replacement costs and damages to other property.

104.    Plaintiff demands judgment against Defendants for compensatory and punitive damages for herself and each class member, for the establishment of a common fund, plus additional remedies as this Court deems fit.

**COUNT VI**

**UNJUST ENRICHMENT**

105.    Plaintiff realleges and incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully here.

106.    As the intended and expected result of their conscious wrongdoing, Defendants have profited and benefited from the purchase of the Products by Plaintiff and the classes and Defendants were paid directly by Plaintiff and class members in their stores nationwide.

107.    Defendants have voluntarily accepted and retained these profits and benefits, with full knowledge and awareness that, as a result of Defendants' misconduct, Plaintiff and

the classes were not receiving products of the quality, nature, fitness, or value that had

been represented by Defendants, and that reasonable consumers expected.

108.    Defendants have been unjustly enriched by their fraudulent and deceptive

withholding of benefits to Plaintiff and the Classes at the expense of these parties.

109.    Equity and good conscience militate against permitting Defendants to retain these

profits and benefits.

110.    As a direct and proximate result of Defendants' unjust enrichment, Plaintiff and

class members suffered injury and seek an order directing Defendants' disgorgement and

the return to Plaintiff and the classes of the amount each improperly paid to Defendants.


## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class and

Subclasses, prays for the Court to: Determine that this action may be maintained as a Class

action with respect to the Class identified herein; certify a class action, with respect to particular

issues if appropriate; and designate and appoint Plaintiff and her counsel to serve as Class

Representative and Class Counsel;

A.    Enter judgment in favor of Plaintiff and the Class against Defendant Sherwin

Williams Company;

B.    Award Plaintiff and the members of the Class restitution, disgorgement, actual,

compensatory, punitive and/or exemplary damages in such amount to be determined at trial or as

provided by applicable law, and attorneys' fees and costs, including pre-judgment and post-

judgment interest thereon;

C.     Enter a temporary, preliminary, and permanent order for injunctive relief enjoining Defendant from continuing to engage in business practices complained of herein; and

D.     Provide such further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) as to all claims so triable as a matter of right.

/s/ Lisa DeBrosse Johnson
Lisa DeBrosse Johnson
BBO# 632428
Attorney for Plaintiff and Proposed Class
170 Milk St, 4th Floor
Boston, MA 02109
Email: Lisa@lisajohnsonlaw.com
Telephone: 617-850-9065